IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGEL L. RIVERA DOMENECH,

Plaintiff

v.                                              CIVIL 98-1459 (HL)

HÉCTOR PÉREZ, et al.,

Defendants

## OPINION AND ORDER

Royal & Sunalliance Insurance (P.R.) Inc. (hereinafter "Royal") filed a Motion for Summary Judgment (Docket No. 64) arguing that its insurance policy does not cover the damages alleged by the plaintiff because such damages occurred on a date prior to the effective date of the insurance contract. In response plaintiff filed Rivera's Opposition to Royal's Motion for Summary Judgment and Rivera's Cross-Motion for Partial Summary Judgment. (Docket No. 73). The plaintiff argues that the insurance policy does cover the damages caused by the negligent acts committed during the period that the insurance policy was effective. Therefore, he asks that the court deny Royal's motion for summary judgment and grant his cross-motion since Royal's policy provides coverage for those damages to the vessel subject of the policy that can be attributed to work performed by co-defendants Quality Boat Services during the vessel's second repair job.




AO 72
(Rev 8/82)

CIVIL 98-1459 (HL) 2

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material "if, under applicable substantive law, it may affect the outcome of the case." An issue is genuine "only if there is conflicting evidence that requires a trial to resolve the disagreement." Ortega Rosario v. Alvarado Ortiz, 917 F.2d 71, 73 (1st Cir. 1990). The moving party must demonstrate "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. at 325. Then the nonmoving party has to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough evidence to enable a finding favorable to the nonmoving party'." Hidalgo v. Overseas Condado Ins., 120 F.3d 328, 332 (1st Cir. 1997). Throughout this analysis the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

CIVIL 98-1459 (HL)                                      3

## DISCUSSION

The insurance policy issued by Royal in favor of Quality Boat Services is titled "Commercial Lines Policy" and the forms and endorsements made part of the policy at the time it was issued were the Marina Operators Liability Wording and the Ship Repairer's Liability Clauses among others. (Docket No. 64, Exhibit II.) The liability coverage contained in the policy clearly states that the "Underwriters . . . agree . . . to indemnify the Assured for all sums which the Assured shall become liable to pay by reason of the legal liability of the Assured as ship repairers for: (i) Loss of or damage to any vessel or craft which is in the care, custody or control of the Assured for the purpose of being worked upon . . . (ii) Loss of or damage to any other vessel or craft upon which the Assured is working . . . ." (Docket No. 64, Exhibit II.) The policy lists several exclusions, but only some are relevant to the case at bar because exclusion clauses are what limit the insurer's obligation. (See Appendix A.)

Royal argues that the plaintiff became aware of the deficiencies and defects before the effective date of the insurance policy. Therefore, when the vessel was returned to Quality Boat Services' facilities on November 8, 1997 for correcting the deficiencies of the original repairs, the damages had occurred before the effective date of Royal's policy. The plaintiff argues that new and different negligent acts were committed by Quality Boat Services when the vessel returned the second time to its facilities, when different and

CIVIL 98-1459 (HL) 4

additional damages occurred to the vessel, and that this negligent work upon the vessel was done after October 31, 1997 when Royal's policy was effective. The policy period ran from October 31, 1997 to October 31, 1998. If different negligent acts were committed by Quality Boat Services the second time the vessel came in for repairs on November 8, 1997, there is little doubt that these negligent acts are covered by Royal's policy.

In addition Royal argues that the insurance policy does not cover costs or expenses to make good faulty workmanship, material or design caused or provided by the assured. The plaintiff argues that under Royal's policy there is no exclusion for negligent repairs caused by the assured in an effort to make good a prior faulty workmanship and that this exclusion is not a "work-product" or "injury-to-work" exclusion. Under this type of exclusion the insurer is not responsible for the defective work of the insured. Also, the insurer is not liable for the costs and expenses of correcting the defects. To determine if the negligent repairs of Quality Boat Services are covered under the policy, it is necessary to understand the difference between the defects and deficiencies of the work performed by the insured and the damages that these defects may cause to other property because the first type of damages are not covered by the policy, but the second one is. <u>Meléndez Piñero v. Levitt & Sons of Puerto Rico, Inc.</u>, 129 D.P.R. 521, 542-43 (1991). This is why Royal's motion for summary judgement must be denied. Royal may be required to indemnify

plaintiff for any damages adequately proven by the plaintiff to have been caused by Quality Boat Services the second time the vessel came in for repairs.

Royal also argues in its motion for summary judgment that the insurance policy does not cover the allegations contained in the amended complaint, because the events do not constitute an occurrence. On the other hand, the plaintiff argues that the second round of repair work upon the vessel is in fact an occurrence within the coverage of Royal's policy. The word occurrence has been defined as an accident which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." United States Liab. Ins. Co. v. Selman, 70 F.3d 684, 689 (1st Cir. 1995); Saavedra v. Joyerías Gordons, Inc., 120 D.P.R. 360, 363 (1988).

When an insurance clause is based on an occurrence, the coverage it provides is more extensive, covering for example, losses or damages to property due to an error or an omission. Albany Ins. Co. v. Compañía de Desarrollo Comercial de Puerto Rico, 125 D.P.R. 421, 426 (1990). The test to determine the date of the occurrence is the time at which a reasonable person would be aware that a damage exists that may give rise to a cause of action. American Home Assurance Co. v. Libbey-Owens-Forf Co., 786 F.2d 22, 30 (1st Cir. 1986). The important date is when the complaining party knows it was actually damaged. The alleged negligent acts committed by Quality Boat Services that

occurred after the policy was effective do constitute an occurrence. Therefore, if negligent acts caused the alleged damages, they are covered by the insurance policy.

In view of the above, Royal's Motion for Summary Judgment is DENIED.

## PARTIAL SUMMARY JUDGMENT

The summary judgment standard under Rule 56 is not altered by cross-motions for summary judgment. Cross-motions for summary judgment require the court to determine if either of the parties deserves judgment as a matter of law on facts that are not disputed. Adria Int'l Group, Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001); see also Wiley v. American Greetings Corp., 762 F.2d 139, 141 (1st Cir. 1985).

Defendants have failed to file the required opposition and statement of contested facts to plaintiff's cross-motion for partial summary judgment. When a motion for summary judgment is unopposed by the nonmoving party, summary judgment shall be entered against the nonmoving party but only if appropriate. Fed. R. Civ. P. 56(e). The court must consider if there is an absence of genuine issues of material fact. Fed. R. Civ. P. 56(c); Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 929 (1st Cir. 1983).

Furthermore, Local Rule 311(12) requires that a motion for summary judgment "be served and filed annexed to the motion a separate, short, and concise statement of material facts as to which the moving party contends there is no genuine issue to be tried . . . ."

CIVIL 98-1459 (HL)                                            7

<u>United States District Court for the District of Puerto Rico, Local Rules of the Court</u>, Rule 311(12) (Michie 1996). These facts are deemed admitted unless the nonmoving party files an opposition that includes "a separate, short, and concise statement of the material facts as to which it is contended that there is a genuine issue to be tried . . . ." <u>Id.</u> The First Circuit Court of Appeals has held that the failure to present a statement of disputed facts justifies the court's deeming the movant's statement of uncontested facts admitted and ruling accordingly. <u>Corrada Betances v. Sea-Land Serv., Inc.</u>, No. 00-2153, slip op. at 6 (1st Cir. May 3, 2001); <u>see also</u> <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000); <u>Ayala-Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 95 (1st Cir. 1996); <u>Rivas v. Federación de Asociaciones Pecuarias</u>, 929 F.2d 814, 816 (1st Cir. 1991); <u>Laracuente v. Chase Manhattan Bank</u>, 891 F.2d 17, 19 (1st Cir. 1989). Therefore, plaintiff's statements of uncontested facts filed annexed to his cross-motion for partial summary judgment shall be deemed admitted, and the court will consider only if plaintiff is entitled to partial summary judgment as a matter of law.

## UNCONTESTED FACTS

1. Rivera is a United States citizen residing in Mayagüez, Puerto Rico, and is the owner of the yacht MERCEDES, a 48' Hatteras Sport Fisherman, built in 1989, Puerto Rico Registry No. PR-2054-BB (hereinafter sometimes the "yacht" or "vessel"). (Docket No. 73, Exhibit 1.)

CIVIL 98-1459 (HL)                                     8

2. United Marine Services, Inc., conducted business under the trade name Quality Boat Services ("QBS"), with its principal place of business at San Juan Bay Marina in San Juan, Puerto Rico, and is engaged in the business of marina operations and performing work upon vessels at said facilities.

3. On or about March 19, 1997, MERCEDES was hauled at QBS facilities to inspect the yacht's hull and quote repairs for blisters and other work. (Id., Exhibit 2.)

4. On April 17, 1997, Rivera hired QBS to perform the blisters repairs, prepare and paint the complete exterior of MERCEDES, seal and paint the side window frames, cockpit floor, and flying bridge, reroute the engine exhaust lines, and perform certain other work. (Id., Exhibit 3.)

5. The work was eventually concluded and soon after receiving delivery of his yacht on or about June 17, 1997, Rivera noticed many defects in the work performed by QBS including, but not limited to: (a) the blister treatment was not the one recommended by the manufacturer or the requested by Rivera; (b) the blister treatment was not applied according to the instructions of the product's manufacturer; (c) over-sprayed and under-sprayed painted areas; (d) different colors were used than the one used by the manufacturer and required by Rivera resulting in mismatched painted areas noticeable throughout the yacht; (e) the paint was chipped and cracked in some areas; (f) the beading and caulking was not the same color as the paint; (g) dust particles adhered to the paint in some areas

CIVIL 98-1459 (HL)                              9

due to improper techniques in applying the paint; (h) defective shower and bilge pumps; (i) inadequately fitted railings; (j) metal railings and other parts were smeared with paint; (k) damage to a propeller and a shaft which required replacement; (l) damage to an air conditioning unit wish required repairs; and (m) other deficient and defective work. Rivera notified QBS of the deficiencies in the work performed on MERCEDES. (Id., Exhibit 4 and 5.)

6. On July 9, 1997, Mr. Julian Ducat ("Ducat"), a certified marine surveyor, at the request of QBS, surveyed MERCEDES while afloat at the Club Deportivo del Oeste in Cabo Rojo. Ducat noted many deficiencies in the work that was done on the yacht, including among others: (i) insufficient attention to the detail in the performance of the job as evidenced by the amount of overspray; (ii) insufficient paint coverage in some areas; (iii) incomplete buffing; (iv) lack of attention to the proper fit of hardware items removed and refitted; and, (v) other irregularities. (Id., Exhibit 6.)

7. On July 25, 1997, QBS agreed to do the work to repair and/or correct each and every discrepancy noted in Ducat's report. (Id., Exhibit 7.)

8. On September 10, 1999, Policy No. CLP 122817 was issued by Royal Insurance Company of Puerto Rico, Inc., in the name of United Marine Services, Inc. d/b/a/ Quality Boat Services covering the policy period from October 31, 1997 to October 31, 1998

CIVIL 98-1459 (HL)                               10

insuring QBS for marina operators and ship repairers liability. (Id., Exhibit 8; Docket No. 64, Exhibit II.)

    9. MERCEDES returned to QBS on November 8, 1997 for repairs to correct the deficiencies observed by Rivera and documented by Ducat, which deficiencies were recognized by QBS in the minutes of a meeting held on January 2, 1998. (Id., Exhibits 9 & 10.)

    10. While MERCEDES was in the care, custody and control of QBS during the second round of repair work, new and different negligent acts by QBS caused different and additional damages to those damages previously caused by QBS during the first round of repairs. During the second round of repair work, QBS applied paint remover on the hull bottom below the waterline which severely affected the original 3M bottom treatment and further compounded the treatment's original misapplication. (Id., Exhibit 11 and 12.)

    11. QBS returned MERCEDES to Rivera on or about May 24, 1998. (Id., Exhibit 11.)

    12. Also, as a result of the vessel being on-the-hard (hauled out) at QBS' facilities for the unreasonable period of more than six (6) months, from November 8, 1997 to May 24, 1998, the vessel suffered deterioration and damages to her propulsion, mechanical and electrical systems. (Id., Exhibit 12.)

Because it is clear that damage was suffered by the MERCEDES during the life of the insurance policy while the vessel was in the care of Quality Boat Services, and because such damages do not fall within the exclusions of the policy, the policy covers such damages. Therefore, plaintiff's Cross-motion for Partial Summary Judgment is GRANTED.

Non-jury trial is set for July 5, 2001 at 9:00 a.m.

In San Juan, Puerto Rico, this 16th day of May, 2001.

*[signature]*

JUSTO ARENAS
United States Magistrate Judge

CIVIL 98-1459 (HL)                                    12

## APPENDIX A

The commercial lines policy issued by Royal to QBS states the following:

### MARINES OPERATOR'S LIABILITY WORDING

[T]his Policy indemnifies the Assured for sums which they shall become legally liable to pay as damages:

1. for loss of or damage to private pleasure crafts and their motors, the property of others, while in their care, custody and control

. . .

arising from any of the following operations: Insured
* vessel repair, maintenance or servicing

. . .

### EXCLUSIONS

This policy does not cover against nor shall any liability attach hereunder:

. . .

I. in respect of costs or expenses to make good faulty workmanship, material or design caused or provided by the Assured

J. for fines, penalties, aggravated exemplary or punitive damages

. . .

### SHIP REPAIRER'S LIABILITY CLAUSES

. . .

6. <u>Coverage</u>

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mention to indemnify the Assured for all the sums which the Assured shall become liable to pay by reason of the legal liability of the Assured as ship repairers for:

    i) Loss of or damage to any vessel or craft which is in the care, custody or control of the Assured for the purpose of being worked upon including shifting and moving within the limits the limits of the port at which the work is being carried out and including trial trips but not exceeding 100 miles from such port;

    ii) Loss of or damage to any other vessel or craft upon which the Assured is working except vessels or craft at sea other than whilst on trial trips;

    iii) Loss of or damage to cargo or other things on or discharged from any of the vessels or craft referred to in (i) or (ii) above;

      iv)    Loss of or damage to machinery or equipment of any vessel or craft, whilst such machinery or equipment is removed from such vessel or craft and is in the care, custody or control of the Assured for the purpose of being worked upon, including whilst in transit between such vessel or craft and the premises of the Assured or whilst inn transit to or from specialist repairers' or manufacturers' premises;

      v)    Removal of wreck;

      vi)    Los of or damage to third party property occurring in the course of or arising from the ship repairing operations of the Assured.

Where such liability results from the negligence of the Assured, his servants, agents or sub-contractors occurring during the period of this insurance.

9. <u>Exclusions</u>

. . .

      vi)    for payment under penalty clauses, detention, demurrage, loss of time, loss of freight, loss of charter, loss of market or any other consequential loss whatsoever, in respect of property referred to in Clause 6 above;

(Docket No. 64, Exhibit II)